**FEDERAL SURETY CO. v. SHIGLEY.**
(No. 3045.)

Court of Civil Appeals of Texas. Amarillo.
May 30, 1928.

Rehearing Denied June 20, 1928.

1. **Master and servant ⊚⊃361—Defendant, injured after transfer of stock by foreign corporation, but before forfeiture of charter, held employee of original corporation, and entitled to compensation under policy to it (Rev. St. 1925, art. 1387).**

Where Kansas corporation transacted business in state without permit under corporate name, and thereafter one stockholder sold out to other stockholder, but amendment to charter seeking change of name was not filed, but incorporation was permitted to expire by action of state in forfeiting corporate charter, and there was no dissolution, as provided by Rev. St. 1925, art. 1387, defendant, injured after transfer of corporate stock, but several months before forfeiture of charter, *held* employee of corporation as originally named, and was entitled to compensation under insurance policy naming such corporation as employer.

2. **Master and servant ⊚⊃401, 405(6)—Petition alleging employment for two months at average weekly wage, and proof thereof, held not to make case for compensation based on weekly wages (Rev. St. 1925, art. 8309, § 1).**

Under Rev. St. 1925, art. 8309, § 1, providing that in measuring compensation for injuries employee must have been employed for substantially whole year preceding injury, or, if for only part time, measure of compensation should be 300 times average daily wage of employees in same class, petition alleging employment by injured employee for 2 months prior to date of injury at specified average wage of $50 per week, and proof thereof, did not state case for recovery of compensation at percentage of weekly wage.

3. **Master and servant ⊚⊃416—Without finding of average wage, judgment for compensation at percentage of weekly wage was error (Rev. St. 1925, art. 8309, § 1).**

Judgment for compensation at rate of $20 per week for 100 weeks for loss of an eye held without legal basis, where trial judge, in findings of fact, made no finding of average wage based on employment of defendant as required by Rev. St. 1925, art. 8309, § 1.

4. **Master and servant ⊚⊃403—Injured employee must plead and prove failure to furnish medical attention within reasonable time after notice of injury to recover therefor.**

Injured employee, to recover for medical services and for medicines furnished, must plead and prove that association failed to furnish reasonable medical attention and medicines within reasonable time after notice of injury.

Appeal from District Court, Carson County; Newton P. Willis, Judge.

Suit by the Federal Surety Company against M. A. Shigley, in which defendant filed a cross-action. From a judgment against plaintiff in main action, and judgment for defendant in cross-action, plaintiff appeals. Reversed and remanded for new trial.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, and Carrigan, Britain, Morgan & King, of Amarillo, for appellant.

George Gardner, of Wichita, Kan., and James Spiller, of Panhandle, for appellee.

RANDOLPH, J. This is a suit filed by the Federal Surety Company against M. A. Shigley, seeking to set aside an award made to Shigley by the Industrial Accident Board on June 14, 1927, for compensation against the appellant, the Federal Surety Company, at the rate of $20 per week for 100 weeks, for the loss of an eye, which loss occurred on October 26, 1926. The appellant, in its brief, asserts that all necessary jurisdictional facts were alleged by appellant to show that the case was properly before the district court of Carson county, Texas, for adjudication.

The appellee, Shigley, filed his answer, consisting of a general demurrer and general denial, and, in addition, his cross-action seeking to recover judgment, against the plaintiff surety company, for compensation at the rate of $20 per week for 100 weeks, and also for the sum of $293.04 for medical treatment, hospital services, etc. The case was tried be-

fore the court without a jury, and judgment was rendered against appellant in its attempt to set aside the Industrial Accident Board's award, and in favor of defendant Shigley on his cross-action against appellant, as prayed for by him. From these judgments, appeal has been taken to this court.

The paramount question presented on this appeal by appellant is: The judgment of the trial court was not authorized by and was contrary to the law, in that the evidence shows that the defendant, Shigley, at the time of his injury, was not working for the Shigley-True Motor Company, to whom the insurance policy was issued, but, on the contrary, as shown by the evidence, he was employed by and working for the B. C. True Trailer & Equipment Company.

The evidence discloses that the Shigley-True Motor Company was a corporation organized under the laws of the state of Kansas; that the Shigley-True Motor Company opened an office and place of business in Panhandle, Carson county, Texas, in May, 1926, with B. C. True in charge of that establishment, but without taking a permit to do business in the state of Texas. The defendant M. A. Shigley was, at this time, working for the Shigley-True Motor Company at Panhandle, in charge of the shop. The defendant Shigley was not a stockholder in the Shigley-True Motor Company, and was not financially interested in same. At the time of the opening of the business in Panhandle, Texas, it was operated under the sign of "Shigley-True Motor Company," and this sign continued to indicate the style of the party doing business in the premises until about the 1st day of September, 1926, when same was substituted by one entitling the party doing business therein as the "B. C. True Trailer & Equipment Company."

B. C. True purchased the stock owned by O. E. Shigley in August, 1926, and this purchase of stock, consisting of 88½ shares, from O. E. Shigley, gave True the ownership of all the stock in said corporation, except 3 or 4 shares held by other parties, for the purpose of complying with the Kansas law, which required that there be five shareholders in a corporation. By the bill of sale, evidencing the sale of stock by O. E. Shigley to True, True contracted to convey or caused to be conveyed to said O. E. Shigley the shop equipment, office equipment, and one Essex coupé used in the conduct of his business, by the Shigley-True Motor Company in Wichita, Kansas, and O. E. Shigley contracted to pay certain sums of money and to assume certain indebtedness owing to various parties. The bill of sale to the stock also gave True the permit to sell what was known as the "oil field special trailer."

B. C. True testified that he got the material to open the plant at Panhandle from the Shigley-True Motor Company at Wichita, Kan. When True attempted to change the name of the business from the Shigley-True Motor Company to the B. C. True Trailer & Equipment Company, a directors' meeting was held. It is apparent from the evidence that True and the directors prepared a "report," which was evidently an amendment to the charter, changing the name from Shigley-True Motor Company to the B. C. True Trailer & Equipment Company. This was sent to his attorney in Kansas. This "report" or "amendment" was never presented to the Kansas authorities, but, on the advice of Gardner, the attorney for the corporation, the charter was allowed to expire by forfeit. This occurred in April or May, 1927.

[1] Summarizing the facts, as above set forth, we find that a Kansas corporation came into this state and began transacting its business at Panhandle, Tex., without taking out a permit to do business in Texas; that at the time of such entry into the state it transacted its business under its corporate name; that, during the time it was so transacting its business, B. C. True and O. E. Shigley, the two principal stockholders, entered into a contract whereby True became the owner of the stock of said corporation owned by said O. E. Shigley, making True the sole owner of the stock of such corporation, with the exception of several shares that were held by other parties in an attempt to comply with the Kansas law, requiring five stockholders in order to incorporate; that the defendant M. A. Shigley was injured, as alleged, on the 26th day of October, 1926; that B. C. True and his board of directors attempted, by some character of instrument, to amend the charter of the company, by changing it from Shigley-True Motor Company to the B. C. True Trailer & Equipment Company; that this instrument was not filed, but the incorporation was permitted to expire by the action of the state in the forfeiting of its charter; that this forfeiture did not occur until April, 1927, several months after the date of the injury to the defendant.

Do these facts show that the defendant M. A. Shigley was working for Shigley-True Motor Company, or for the B. C. True Trailer & Equipment Company, at the time of his injury? A corporation's existence is terminated, as provided by article 1387 of the Revised Civil Statutes of Texas 1925: By expiration of the time limited in its charter; by judgment of dissolution rendered by a court of competent jurisdiction; where four-fifths in interest of all stockholders, at a duly called meeting of such stockholders, consent in writing to such dissolution, etc., and such written consent is filed with the secretary of state; where, without a stockholders' meeting, all the stockholders consent in writing to a dissolution and such writing is filed with the secretary of state, who shall issue a certificate that the corporation is dissolved and notation thereof noted on

the ledger in the secretary of state's office; by forfeiture of its charter without judicial ascertainment under any special provision of law; where a corporation created under the act now under consideration shall fail to begin active operations within three years after filing its charter with the secretary of state, and whenever a corporation, upon proper judicial ascertainment, is found to be insolvent.

It will be seen from the above that there has been no dissolution of the Shigley-True Motor Company, as provided by the article. It is not necessary to discuss the question as to whether or not our statute controls the matter of the dissolution of the corporation organized in the state of Kansas, for it clearly appears that the corporation was in existence up to April, 1927, long after the injury to the defendant. Hence we hold that the evidence establishes that the defendant M. A. Shigley was in the employ of the Shigley-True Motor Company at the time he was injured. The insurance policy named the Shigley-True Motor Company as the employer, the notice of the injury named that company as the employer, the facts in evidence clearly show that the defendant was employed by that company, and that he was in its employ when hurt. New Amsterdam Casualty Co. v. Harrington, 283 S. W. 261 (Court of Civil Appeals); Id., 290 S. W. 726 (Com. of Appeals).

The defendant, in his answer and cross-action, setting out his weekly average wage, alleges as follows:

"On and prior to the 26th day of October, 1926, defendant was in the employ of the Shigley-True Motor Company in Carson county, at its place of business at Broadway and Charles streets, Panhandle, and had been in their employ for about two months prior to that date, and was being paid by the Shigley-True Motor Company an average wage of $50 per week, and, in the event of injury to him, the said defendant was entitled to the maximum sum of $20 per week for such time and period that he might be totally disabled from the performing of his accustomed duties as an employee of the said Shigley-True Motor Company, and to other and further payments for injuries received, as, for instance, for the total and permanent loss of the sight of one eye, the amount of 60 per cent. of the average weekly wages for a term of 100 weeks and for hospital care, medicine, and doctor's bills while so injured and being treated."

Upon this issue the defendant Shigley testified:

"I came to Panhandle to take charge of the shop for Shigley-True Motor Company (some time subsequent to May, 1926). They put in barns down here at Panhandle, Texas. I worked for them until the 26th day of October, 1926. * * * My average weekly wage was $50 a week, straight time."

7 S.W.(2d)—39

Article 8309, section 1, of the Revised Civil Statutes of Texas 1925, provides:

"'Average weekly wages' shall mean:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed. * * *

"5. The average weekly wages of an employee shall be a one fifty-second part of the average annual wages."

[2] In fixing the method of ascertaining the measure of defendant's compensation, it is apparent (1) that he must have been employed for substantially the whole of the year preceding his injury; (2) if he was not so employed, but was only employed for a part of the time, then the measure of his compensation is 300 times the average daily wage which an employee of the same class, working substantially the whole of such immediately preceding year, in the same or similar employment, in the same or a neighboring place, shall have earned in such employment during the days when so employed. It will therefore be seen that neither the pleading of defendant nor the evidence before the court complied with the requirements of this statute.

[3] The trial judge, in his findings of fact, makes no finding of average wage, based upon the employment of defendant, as required by this statute. Hence the judgment for compensation of defendant had no legal basis. Texas Employers' Ins. Ass'n v. Fitzgerald (Tex. Com. App.) 296 S. W. 509; Texas Employers' Ins. Ass'n v. Bateman (Tex. Civ. App.) 252 S. W. 339.

[4] In order that the defendant be entitled to recover for medical services rendered and for medicines furnished, etc., he must have pleaded and proved that the association failed to furnish reasonable medical attention and medicines, within reasonable time after notice to the association of defendant's injury. Home Life & Accident Co. v. Jordan (Tex. Civ. App.) 231 S. W. 802.

For the errors indicated, the trial court's judgment is reversed, and the case is remanded for a new trial.